May it please the Court, Michael Cotter on behalf of Petitioner Mario Jorge Blanco. Your Honors, Mr. Blanco comes before the Court on four separately but equally dispositive issues on his petition for review of the decisions below by the Immigration Judge and the Board of Immigration and Appeals. The first matter of concern is related to the lower court's finding of removability as it related to the false United States citizenship claim upon presentation at the primary inspection lane in San Ysidro. The legal standard for the government in meeting this charge is clear as stated by the Supreme Court in the Woodbury case that there is clear unequivocal and convincing evidence to support the charge. Petitioner in both his declarations and testimony stated he told to the Border Patrol agents that he was quote born in Argentina but grew up in Los Angeles. Now from the simple facial look at it this is quite different from stating he was a United States citizen which the government does allege happened. It is important to note that although none of the Border Patrol agents stated they remembered Petitioner stating this at primary, the same agents admitted at the individual merits hearing they had no independent recollection of events which took place. In addition, Petitioner did have an eyewitness who was in the automobile with him at this time, unfortunately which was not presented which I will get to which goes to the ineffective claim, but he did have a witness who would have substantiated that claim of what he stated. Now the immigration judge noted. The person that you just referred to didn't testify? He did not, Your Honor, but his declaration, his name is Eric Jackson, his declaration was submitted to the BIA as part of the ineffective claim. Can the immigration officers say that your client claimed to have been born in the United States? That's what the Border Patrol agent says that my client said. Obviously. Three of them. Yes, three of them, Your Honor. Well, there was only one, as I understand it, in the primary inspection lane, and when the judge narrowed the issues, it was basically that primary, the primary agent, the agent in primary versus my client's statements. Now, Your Honor, the I.J. noted that the government's evidence. Suggesting that he changed his statement when he got to secondary? Well, I'm suggesting, Your Honor, that what happened in secondary is an entirely different issue in the fact of the results that came from the sworn statement in the I-213 were the result of coercive elements. What we're alleging is in the beginning, he did state to the primary Border Patrol agent that he was born in Los Angeles, born in Argentina but grew up in Los Angeles. Obviously, when it comes down to, you know, an issue between words, an eyewitness would have been important. Now, I would submit that the I.J.'s finding regarding the evidence is an error for several reasons. Number one, the I.J. failed to make an adverse credibility determination as to where he responded to statements, which is relevant because his testimony on what he actually said to the Border Patrol agents should not have been discounted so easily as the I.J. did. Second, the inherent unreliability of the I-213 in the sworn statement should have been severely undermined based on the totality of the circumstances within the record. Although the I.J. found the I-213 and Petitioner's statements therein to be inherently reliable, the law is equally clear that if Petitioner produces anything probative, which contradicts anything material in the I-213, that government evidence is therefore called into question. Again, a non-credibly adverse declaration by the alien can reasonably be considered to be probative evidence. Now, the declaration submitted by Petitioner was rife with allegations indicating a coercive atmosphere produced the evidence which the I.J. so heavily relied upon. Three important and essentially undisputed facts are related to this issue. Number one, that immediately prior to his entry, Petitioner had been in Mexico performing his occupation as a furniture mover, which is physically exhausting in itself. He moved somewhere in the upwards of 4,000 pounds of furniture that day. Number two, he had been in custody for no less than two days prior to the taking of the government's evidence. Three, and in conjunction with two, Petitioner could not have slept based on the vile conditions in the custody, which, taken in consideration that Petitioner had been all up day all up the day immediately prior. Didn't he sign a sworn statement the day after admitting that he had falsely claimed American citizenship? I believe that the sworn statement was. Can we start with a yes or no? No, Your Honor. I do not believe so. I believe the sworn statement was taken. The sworn statement in the I-213. Well, excuse me. The sworn statement was as a part of the taped interview, which was two days after. That's how I read the record, Your Honor. So if we look in that sworn statement, he said what? I think that he did. He did allege that he. He admitted. He did admit that he that he that he did state false claim. But our point is, Your Honor. This was two days later. And this was these results were the result of a course of atmosphere. In fact, the government's own witness, the interviewing Border Patrol agent, admitted on the stand that the ordeal with which the Petitioner was submitted, which was over three days, which was over two days of sitting on a metal bench without sleep, was without the was far from customary as the actual the procedures that go on. All of these facts speak to the state of exhaustion of the petitioner immediately prior to the government's taking of evidence. Equally important is the the promise by the Border Patrol agent that should the petitioner answer the questions in the way that he wanted to, he would be able to return to the United States. Now, the immigration judge and respondents reliance on the notion that the interviewing Border Patrol agent testified to not as what the IJ found that that all all damaging statements were included in. No non-damaging statements were included. It is simply unreasonable to expect a Border Patrol agent to stand up in the middle of proceedings and admit outright. You know what? I commit coercive tactics. That's how I get my confessions. So because they they shouldn't shouldn't be expected to admit it.  Well, Your Honor. Is that true? To a degree, Your Honor. I would say that seeing as how. Sounds to me like that's your argument. Yes, Your Honor. When the immigration judge found that he was did not make an adverse credibility finding. Yes, Your Honor. I would say that that that the the petitioner's words need to be taken just as strongly. Now, the fact that. Is there anything wrong with an immigration judge hearing one witness say this is what happened? And then three other witnesses saying that's not what happened? Weighing all the facts and circumstances, including that the three witnesses from the government are more believable than the than than the one person. Is there anything wrong with that? No, there's nothing wrong. Any requirement that there be an adverse credibility finding in a circumstance like that? No, Your Honor. But in the removal in the removal context, as I think it's well known, cases can be proven or disproven on testimony alone, which is why I was pointing out that there was a lack of lack of a credibility finding, which almost presumes that that he was that the immigration judge at least found him credible. Now, the fact that there was, like I said, a witness in the car at the time goes to the ineffective assistance that he was provided. In this regard, the law is clear that the alien is entitled to competent representation in removal proceedings. The alien can prove an ineffective assistance by showing the former attorney failed to act with sufficient competence, which ultimately prejudiced the alien in the removal proceedings. Now, despite respondents' statements that we have cited no law as to what defines these standards, that's simply not true. We have cited the Lynn versus Ashcroft case, which the rule regards to competency, is whether prior counsel's actions reasonably prevented the alien from fully presenting his or her case. The Itaburia case, with respect to the prejudicial component, states that all that is required is for the alien to prove prior counsel's inaction may have affected the outcome of proceedings. Here, the petitioner presented the witness, Eric Jackson, who was present in the automobile in primary inspection and could have corroborated his story before the final hearing on January 25th. Contrary to respondents' assertions, this hearing was not necessarily only to render an oral decision, making the presentation of the witness relevant. The transcript clearly reveals the immigration judge specifically asked both attorneys if there was anything further he should consider prior to rendering his oral decision. Again, I.J.'s words here clearly show he was inviting presentation of further evidence. It cannot reasonably be concluded that an eyewitness account to corroborate what petitioner has stated in primary could not have affected the outcome of the case. In fact, Attorney Teague admits the importance of this and knowledge thereof in her own declaration. Respondents' reliance on the former's declaration as to nullify the claim is pretty much without merit in the fact of Attorney Teague indicates she was unaware of the presence of Mr. Jackson until after the close of proceedings. Both petitioner and Mr. Jackson submitted sworn declarations under the penalty of perjury, and I think, Your Honor, it's important to continue to bring up the non-adverse credibility finding that this was not the case. Do you want to save 50 seconds for rebuttal? Yes, Your Honor. I'll move 50 seconds as well. Okay. If it may please the Court, Anthony Payne on behalf of the acting Attorney General. As an initial matter, the government did not have the burden of establishing Mr. Blanco's inadmissibility. Rather, it was Mr. Blanco's burden of establishing his admissibility. Speaking of burdens, before we get too far, we got a 28-J letter yesterday telling us about a DHS regulation that's been in place for at least, what, six months? I believe so, yes, Your Honor. Telling us that the case is moot, at least as to one count? With respect to the adjustment, I apologize, Your Honor. I would hope so. That's not what a 28-J letter is for. Why isn't that waived? Making this mootness argument at the last minute. Well, I was not making a mootness argument. I was just bringing it to the Court's attention and indicating that to the extent that he still has an avenue to seek adjustment, it's just not with the Board. So his adjustment is not moot, it's just not with the Board. So today he... It was Mr. Blanco's challenge to the Board's denial of his application for adjustment of status? Yes, but his adjustment is not moot, Your Honor. He could still today go to DHS and file for adjustment. So that avenue is still available to him. It's just with respect to whether or not the Board had jurisdiction or has jurisdiction now to consider that claim. So all you're telling us is that we go proceeding through this case, if we were to grant relief, it would go back to DHS? DHS for consideration. DHS for considering any of the claims that are before us? Yes, he still is eligible to apply for adjustment. It's just the venue that he would seek adjustment. All right. Turning back to the inadmissibility charge, which does relate to adjustment, but he was also found to be inadmissible on that charge. Substantial evidence supports the IJ's finding that the I-213s, which this Court has found to be reliable, as well as the primary referral form and as well as the testimonies of the three immigration officers, establishes substantial evidence that he failed to meet his burden of showing that he did not make a false claim to United States citizenship. And placed in the context, this is abundantly clear. It's undisputed that Mr. Blanco did not have valid documents when he approached the port of entry. He offered his driver's license to the primary inspector. The primary inspector, who has a presumption of regularity, says that he claimed to be a United States citizen. The referral. Claimed to have been born in the United States. Maybe a distinction without a difference, but isn't that? I believe that is correct, Your Honor. The referral letter indicates that. He goes to secondary inspection, where that is also indicated on the I-213. He goes to after secondary to prepare the sworn statement and indicates on the sworn statement, at least initially, that he was born in the United States. But notwithstanding the sworn statement, notwithstanding the I-213s, you still have the primary inspector testifying that, based on his referral letter and the I-213s, that there's an indication that he claimed to be born in the United States. That evidence alone is sufficient to show that he failed to meet his burden. It was not the government's burden. It was Mr. Blanco's burden to establish that he was admissible to the United States. Having established that substantial evidence showing that he failed to meet his burden, substantial evidence supports an admissibility charge. What happens then is the cancellation of removal side based on the moral turpitude? That's entirely separate, right? Yes, that would go back to the Board. Okay. Now, under our recent and bank decision, Navarro-Lopez, how can what he was shown to have been convicted of a crime of moral turpitude? As Judge Pregerson eloquently set forth, CIMT involves immoral or depraved conduct, meaning it has to be base, vile, and depraved, and violates accepted moral standards. Accepting Judge Pregerson's description of those two elements, his crime shocks the conscience and is contrary to social duties. This is true because the hindrance... Whose conscience is in shock? Well, it would shock society's conscience, Your Honor. Society has a conscience. Well, the moral standards as reflected. So every teenager, every 18-year-old who uses a false driver's license to buy booze is shocking the conscience? If the reason why they're using a false ID, as provided by the statute, is to evade the process of court or to evade proper identification by a law enforcement officer. Or? So what did he give the false ID for? Well, we do not know. Does our case law suggest that it has to be for something of value, to obtain something of value? For the use of an ID? It's the government's position, the fact that he used the ID to avoid process by a law enforcement officer or identification by a law enforcement officer is what makes it fall within the crime involving moral turpitude definition. Our case law says that it has to be done for a purpose of obtaining something of value. Just a use of a false ID? Yes. But I believe, and I may be incorrect, Your Honor, but that there's the added element of the law enforcement officer. Here the statute says, falsely represents or identifies him or herself in order to, as another person or a fictitious person, to any peace officer, either to evade the process of the court or to evade the proper identification of the person. So it's not just using it to buy alcohol. It's using it for a turpitudinous purpose. That is to evade... To mislead a law enforcement officer. Yes. So that's enough. Doesn't have to get into the value side of things. Yes, because otherwise it shocks society's conscience and it's contrary to social duties, because otherwise we would allow this individual to avoid accounting for his or her actions. It would effectively allow him or her to avoid the rule of law. That is... So if someone is going 45 miles an hour in a 25 mile an hour zone, they stop by the police and says, oh, I was only going 25 miles an hour. I was looking at my speedometer. So that turpitudinous conduct... Well, that particular example would not fall within the statute. It would have to be after detention or arrest, the person falsely represents his identification. So it's after arrest, such that the person... And I believe it's People v. Christopher's California case that indicates the purpose of the law is to require the defendant to give sufficient information to allow law enforcement to locate the person if he or she does not appear in court. So that's the purpose of the statute. And it's turpitudinous for... It's categorically turpitudinous because it effectively indicates that the person is trying to avoid the rule of law by not having... I think we have a new word, turpitudinous. I'm sorry. Right up there with truthiness. I always think of turnips when I... Well, if I may elaborate a little bit on your opinion. To the extent that the majority found that fraud is necessarily a crime involving moral turpitude, the government submits that this is also a crime of fraud because it includes a false representation to a police officer. Now, if it shocks the conscience, is this a misdemeanor or a felony? It is a misdemeanor, Your Honor. So that sort of tends to undercut, doesn't it, the notion that it shocks the conscience kind of crime? Well, I don't believe the Court has found that crime involving moral turpitude must be a felony. No, I'm not saying that. I'm saying that it has to shock the conscience. California ranks this as a misdemeanor. Well, in Judge Fragerson's opinion, he did not indicate that misdemeanors can never be... Well, I don't think he was addressing this case. He was setting the standard. The Court was setting the standard. That's correct, Your Honor. Well, that goes into articulating and back. So now we have to implement it, and we are going to have a series of cases, I'm sure, where we're going to have to decide whether something falls into this heinous kind of conduct that shocks the conscience. So wouldn't it be relevant if the legislature, in its wisdom, has categorized it as a misdemeanor and not a felony? It is certainly relevant, but it's the government's position just because it is categorized as a misdemeanor does not mean it cannot shock the conscience. Okay, but would you agree that there is at least some inclination then to look to see how, in this particular case, it was used? Because all we know is he was convicted of the crime. We don't know the facts of the crime, do we? We do not, but it's the government's position that there's no need to know the facts of this case because on its face, the language of the statute falls within the... We're in a circle here because the language is clear as to what it says, but so is the judgment of the California legislature as to the severity of the crime, and it ranks it as a misdemeanor. Do we know of any other? Can you give me another misdemeanor crime that would come readily to mind that would shock the conscience? I'm unfamiliar with California law such that... You can go to federal. You can go to anything. I do not know off the top of my head. I would be happy to follow 28J or a further supplement. Let's see if we need a supplement over here. Thank you. In regards to the problems with determining the specifics of the conviction, I think that that underscores the problem with the immigration judge's admission of the rap sheet. I think that this Court has repeatedly gone over the problems with the immigration judge admitting the rap sheet and the fact that we don't know the details of the conviction. Well, if it's categorically a crime that would qualify, that may be enough. I understand, Your Honor, and I don't think that this comes anywhere near of categorically qualifying, especially when government counsel is trying to state that this is something that shocks the conscience. If we're going to try to determine that it shocks the conscience, I think that Respondent, I mean, excuse me, the Petitioner at minimum, is entitled to a proper review of the certified conviction records, not a computer printout where we admittedly have the IJ essentially closing his eyes and pointing out, you know, I think this conviction happened here, I think this did not happen here. I think on the actual issue of whether 148.9 is a crime of moral turpitude, I think that it's telling the fact that the immigration judge stated he has no precedent whatsoever to rule that it is a crime of moral turpitude. In that kind of instance, Your Honor, I think it's important to underscore looking to the California Court of Appeals determination of what 148.9 determines. As stated in the briefs, the Robertson case, the court looked specifically between 148.9 and 529. They found 529 is the statute that is, quote, intended to punish fraud. 148.9 is concerned with the wrongful interference with the administration of justice. In that, Your Honor, we would state that this is a persuasive decision, the fact that this statute does not require an element, as an essential element, of an intent to fraud. In that, Your Honor, we would state that the immigration judge was being speculative in this respect and had no authority into finding this qualified as a crime of moral turpitude. Thank you, Your Honor. The next matter, U.S. v. Tigran, Petrosian, and Archer, Malikian, that's submitted. Now we come to U.S. v. Guillermo Palladio-Soto.
judges: Pregerson, Hawkins, Fisher